[Civ. No. 2772. First Appellate District, Division Two.—August 12, 1919.]

ROYAL INDEMNITY COMPANY (a Corporation), Respondent, v. MIDLAND COUNTIES PUBLIC SERVICE CORPORATION (a Corporation), Appellant.

[1] NEGLIGENCE — GENERATION AND TRANSMISSION OF ELECTRICITY — DUTY TO MAKE WIRES SAFE.—The duty of a public service corporation engaged in the business of generating and transmitting electricity is not an absolute duty to insulate or make its wires safe in any particular manner; its duty is to make the wires safe under all the exigencies offered by the surrounding circumstances.

[2] ID.—BREAKING OF GUY WIRE — ACTION FOR PERSONAL INJURIES — DUTY TO ANTICIPATE ACCIDENT—ELEMENTS TO BE CONSIDERED.—In an action for damages for personal injuries caused by the alleged negligence of the defendant, a public service corporation engaged in the business of generating and transmitting electricity, in failing to take proper precautions against the breaking of its guy wires in such a way as to convey electricity from its live wires to a person on the ground, in determining whether the accident was

1. Duties and liabilities of electric companies, notes, 100 **Am. St. Rep.** 516; 52 **L. R. A.** (N. S.) 587.

2. Liability of one maintaining electric wires over private property, as distinguished from public highway, for injuries received by adult coming in contact therewith, notes, 21 **Ann. Cas.** 374; **Ann. Cas.** 1918C, 594; 46 **L. R. A.** 97.

one which the defendant should have anticipated and guarded against, the. jury should take into consideration the nature of the country in which the pole was situated, the occupations of the persons living thereabouts, the usual precautions taken by electric companies under similar circumstances, and such matters.

[3] ID.—EXERCISE OF PROPER CARE — PRESUMPTION THAT JURY FOLLOWED INSTRUCTION—VERDICT.—Where, in such an action, the jury was instructed that the owner or operator of an electric plant is not an insurer against injury to other persons; that it has done all the law requires it to do if it has exercised the care in the matter of the construction and maintenance, operation, and inspection of its plant necessary so that the same will not be a source of danger or injury to persons lawfully in the pursuit of their business or pleasure, and that the care which the law exacts from any corporation engaged in operating such an instrumentality is always in proportion to the degree of danger reasonably to be apprehended from the use of the means employed, the appellate court must presume that the jury followed such instruction and, it having rendered a verdict in favor of the plaintiff, that it found that the breaking of the guy wire in question was a danger reasonably to be apprehended.

[4] ID.—DUTY TO ANTICIPATE ACCIDENT.—In this action, in view of the testimony concerning the known ways and means of so insulating guy wires as to eliminate danger to persons on the ground and the use for farming purposes of the field in which the pole was situated, the jury were justified in concluding that the defendant should have anticipated that the guy wire might be subjected to sufficient strain by contact with the usual instrumentalities employed in farming operations to cause a breaking or tearing away of the strands of the wire and a consequent sagging of the wire, and should have insulated its guy wires so as to avoid danger to others in the event of such occurrence.

[5] ID.—ACCIDENT DUE TO INTERVENING CAUSE—DUTY TO ANTICIPATE —PROXIMATE CAUSE OF INJURY.—Where the negligence of the defendant in failing to properly insulate its guy wires would not have caused the injury but for the entanglement of the horse in such wire, but this latter event, in view of the physical conditions of the country where the pole was situated and the use to which the land was put, was one which the defendant should have anticipated, its negligence and not the entanglement of the horse was the proximate cause of the injury.

[6] ID.—RIGHT TO ASSUME GUY WIRE SAFE.—A person working around such a guy wire has a right to assume that it is safe, either by reason of its strength or by reason of proper insulation.

---

5.  Proximate cause and intervening condition, note, 1 **Ann. Cas.** 230.

[7] ID.—ACTION BY INSURANCE COMPANY — ALLEGATION OF STATUS — OMISSION OF IMPLIED ALLEGATION.—In an action by an insurance company on a subrogated claim for damages for personal injuries alleged to have been caused by the negligence of the defendant, an allegation that prior to the date on which the accident happened the plaintiff, by its policy of insurance in writing, did insure a certain employer and its employees (which included the injured person) at the time of the making of the policy; that said policy was written under and in conformity with the terms of a certain act of the legislature, designated as the "Workmen's Compensation, Insurance and Safety Act," etc., carries with it an implied allegation that the plaintiff is an insurance carrier. The omission of an allegation necessarily implied from other allegations is immaterial.

[8] ID.—INSUFFICIENT EXECUTION OF POLICY—RATIFICATION BY PAYMENT—RIGHT TO SUBROGATION.—In this action by an insurance company on a subrogated claim for personal injuries, were it true that proof of the execution of the policy was insufficient, there was sufficient proof that the company ratified its policy and paid the money to the injured employee under said policy. In either event the claim would be lawful, and the insurance company would be entitled to be subrogated to the rights of the injured employee.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Short & Sutherland and Carl E. Lindsay for Appellant.

Everts & Ewing and M. K. Wild for Respondent.

LANGDON, P. J.—This is an appeal from a judgment rendered on a verdict of a jury in favor of the plaintiff in the sum of thirteen thousand dollars. The plaintiff claims to be subrogated to the rights of one A. J. Bellah to recover for personal injuries alleged to have been received by him by reason of the negligence of the defendant. The injured man was a farm-hand and was in the employ of one Max Flentge at the time of the accident. It is claimed by the plaintiff that the employer and employee were within the provisions of the Workmen's Compensation Act and that the plaintiff was the insurance carrier of the employer and paid the claim of the employee and in consequence succeeded to his rights against the defendant.

The facts of the case, in so far as they involve the merits, are as follows: The defendant was a public service corporation engaged in the business of generating and transmitting electricity in the county of Fresno and elsewhere. It had a line of poles running along the county highway into the town of Coalinga, on which poles ran the high-power lines of the company. The pole involved here was situated on the land leased and cultivated by the employer and along the line of the county road about eight or ten feet inside the line. It was guyed by wires running from a point near the top of the pole to the ground on either side. Some of the wires on this pole were dead, but the lower wires, with which we are concerned here, were carrying a load of ten thousand volts of electricity. The guy wires were insulated at a point where, had they broken near the ground and fallen in a perpendicular line from the top of the pole, the insulation would have been below the lowest live wire and the electricity could not have traveled down their length to the injury of anyone upon the ground. On the day of the accident A. H. Bellah, the injured man, was working in company with another man, Wagner, in mowing around the edge of a field of barley. He had a team of horses, as also had his companion. Desiring to eat their luncheon at the place where they found themselves at the noon hour, they unhitched their horses and allowed them to graze, and retired themselves to the shade of the wagon to rest. One of Bellah's horses was a "snorting" colt, and he hitched it to an older horse. The older horse in some way got astraddle of the guy wire of the defendant. Bellah attempted to back it off of the wire. There is conflicting testimony regarding the amount of strain put upon the wire by the horse during Bellah's attempt to release it. One witness testified that the horse was plunging and kicking, but Bellah testified that he was not plunging. But, at any rate, while Bellah was attempting to push and back the horse off of the wire, and had placed the bit in its mouth and was holding on to the ring thereof, several of the strands of the guy wire became detached from the top of the pole, causing the guy wire to sag and come in contact with a live wire at a point below the insulation; the electricity was conveyed down the guy wire into the body of the horse, which was killed by the shock, and Bellah, who was holding on to the bit, received a severe shock, which

threw him violently to the ground, and as a result he has sustained very serious and permanent injuries. It appears that when the strands in the guy wires became loosened and it sagged against the live wire, said guy wire remained at approximately the same angle from the pole as it had been originally placed, and the insulation was not, while it was held at such an angle, below the lowest live wire. The plaintiff insists that a breakage or pulling loose of the strands of the guy wire where it was attached to the pole should have been anticipated by the defendant, and that it was its duty to have so insulated the guy wire that under any conditions which would cause a sagging of the wire, the insulation would nevertheless be at a point below a place of possible contact with the live wires. Appellant argues that there is no absolute duty upon defendant to insulate its guy wires in any particular manner, but that it is possible for the guy wires to be made so strong and to be placed so firmly in their position at a safe distance from the live wires that insulation would be unnecessary; in other words, that the relative positions of the wires themselves may furnish insulation by means of the intervening air. This is tacitly admitted by the respondent, who contends, however, that whether in the particular case the porcelain insulation was necessary and its absence negligence was a question of fact which was submitted to the jury under proper instructions, and that the jury has found by its verdict that the defendant was guilty of negligence in not insulating the guy wires at a point below the live wires in the same manner in which said guy wire was insulated at a point above the lowest live wire. Our conclusion is in agreement with this contention of the appellant. **[1]** The duty of the appellant was not an absolute duty to insulate or make the wires safe in any particular manner. Its duty was to make the wires safe under all the exigencies offered by the surrounding circumstances. The strands of the guy wire were obviously either insufficient in strength or insufficiently attached to the pole to retain the guy wire at the proper angle from the live wires under the circumstances presented. Perhaps it was impracticable to make them sufficiently strong or sufficiently securely attached, but, if so, then appellant should have guarded against their breakage. Appellant realized this duty in guarding against breakage at the bottom, and yet it

is apparent that the wire gave way more easily at the top than at the bottom when subjected to pressure from the bottom, the point at which it would seem most likely that pressure would be exerted. It, therefore, appears that this possibility should also have been anticipated and guarded against. [2] True, in reaching this conclusion the jury should take into consideration the nature of the country in which the pole was situated, the occupations of the persons living thereabouts, the usual precautions taken by electric companies under similar circumstances, and such matters. (*Fairbairn* v. *American River Electric Co.,* 170 Cal. 115, [148 Pac. 788].) [3] The jury was instructed, however, in a manner which we think covered this matter. It was instructed at the request of defendant that the owner or operator of an electric plant is not an insurer against injury to other persons; that it has done all the law requires it to do if it has exercised the care in the matter of the construction and maintenance, operation, and inspection of its plant necessary so that the same will not be a source of danger or injury to persons lawfully in the pursuit of their business or pleasure, and that the care which the law exacts from any corporation engaged in operating such an instrumentality is always in proportion to the degree of danger reasonably to be apprehended from the use of the means employed. The jury has followed this instruction, we must presume, and has found that the danger of these strands breaking above or becoming detached from the pole was a danger reasonably to be apprehended. The jury had before them the testimony of Rudolph W. Van Norden, a consulting engineer, who stated that he was familiar with the usual custom of equipment, erection, and maintenance of power pole lines carrying high-tension currents, such as the lines of the defendant; that he was familiar with the construction of guy wires used in connection with such equipment; that there are ways and methods known to electrical men, especially electrical engineers, to guy poles in such a way that there is no danger to persons or property at the foot of the guy wire, and that methods of properly insulating wires were generally known to people skilled in the business before the 21st of April, 1916; that the danger of contact with a guy on which there is a circuit such as the circuit in this case, carrying ten thousand volts, would be obviated by inclosing a breaker or in-

sulator in that guy wire at such a point that if contact between the guy wire and the circuit should occur from any cause whatever, the current could not follow down the guy wire and pass through a person in contact with the guy wire; that if the insulator were not at a point where the guy wire could not touch any power wire, so that there would be a continuation of the circuit to the ground, it would cease to be a safety device.  It also appears from the record that the pole is located in a field planted with barley, and that the barley was planted right up to the line of the pole. The barley was being cut and horses were being used in connection with the cutting—all of which is a usual and necessary use of the land on which the pole is situated.  **[4]**  We think that the jury was justified in concluding that the defendant should have anticipated that the guy wire might be subjected to sufficient strain by contact with the usual instrumentalities employed in farming operations, to cause a breaking or tearing away of the strands of the wire and a consequent sagging of the wire, and should have insulated its guy wires so as to avoid injury to others in the event of such an occurrence.

Counsel for appellant very ably argues that even though the negligence of the defendant in not insulating its guy wires be admitted, yet such negligence was not the proximate cause of the injury to Bellah, and that such negligence would not have caused any injury to Bellah except for an independent intervening cause over which the defendant had no control, which was the struggles of the horse during Bellah's attempt to back him off of the wire, causing a breakage or detachment of the strands of the guy wire.  We shall consider some of the authorities relied upon by appellant.  In the case of *Polloni* v. *Ryland,* 28 Cal. App. 51, [151 Pac. 296], the court said, quoting from a federal case: "An injury that is not the natural consequence of negligence, and which could not have resulted from it but for the interposition of some new, independent cause *that could not have been anticipated,* is not actionable."  It is said in the case of *Bank of Savings* v. *Murfey,* 68 Cal., at p. 463, [9 Pac. 847], quoting from Beach on Contributory Negligence: "An act is the proximate cause of an event, when, *in the natural order of things and under the circumstances,* it would necessarily produce that event, when it is the first and directed

power producing the result, the *causa causans* of the school-men." Also, quoting from Cooley on Torts: "If the wrong and resulting damages are not known *by common experience* to be usually and naturally in sequence, and the damage does not, *according to the ordinary course of events,* follow from the wrong, then the wrong and the damage are not suffi-ciently conjoined or concatenated as cause and effect, to sup-port the action." Was the entanglement of the horse in the wire an "independent cause that could not have been anticipated," as said in the federal case; or was it "in the natural order of things under the circumstances," or would the damage "in the ordinary course of events follow from the wrong," as said by our own supreme court? Appellant argues that it had no reason to anticipate such a happening. [5] We think, in view of the physical conditions of the country where the pole was situated and the use to which the land was put, the jury was justified in finding that the de-fendant had reason to anticipate an accident of the general nature of the one that occurred in this case. It is not neces-sary that the defendant should have anticipated this precise accident. (*City of Dixon* v. *Scott,* 181 Ill. 116, [54 N. E. 897].) The question of proximate cause was submitted to the jury under proper instructions.

[6] We cannot agree with the appellant that Bellah was guilty of contributory negligence. He had the right to as-sume that the guy wire was safe, either by reason of its strength or by reason of proper insulation. He was doing nothing unusual or foolhardy for a man charged with his duties and performing his work in assisting the horse in dis-entangling itself from the wires.

[7] Appellant further contends that the complaint has no express allegation that the plaintiff is an insurance carrier, and that it is only by such an allegation that plain-tiff can bring itself within the terms of the law subrogating it to the rights of Bellah. The amended complaint alleges that prior to the twenty-first day of April, 1916, the plaintiff, by its policy of insurance in writing, did insure the said Max Flentge and his employees at the time of the making of the policy; that said policy was written under and in conformity with the terms of a certain act of the legislature, designated as the "Workmen's Compensation, Insurance and Safety Act," etc. This allegation, under the law re-

specting insurance companies, carries with it an implied allegation that the plaintiff was an insurance carrier. The omission of an allegation necessarily implied from other allegations is immaterial. (*Richter* v. *Union Land etc. Co.*, 129 Cal. 367, [62 Pac. 39].)

[8] Appellant also contends that there was a failure on the part of the plaintiff to prove that the policy of insurance which was introduced in evidence had been properly executed by the plaintiff company, and that, therefore, there was a failure of proof of the allegation that Bellah had made a lawful claim to the insurance company which is necessary, under the compensation act, to work a subrogation of the insurance carrier. The question arose over proof of the making of a lawful claim by Bellah. If it be true that proof of the execution of the policy was insufficient, there is yet sufficient proof that the company ratified its policy and paid the money to Bellah under said policy. Bellah's claim would be a lawful claim whether made under a policy which had been properly issued in the beginning, or which had been defectively executed by the agents of the company and afterward ratified by said company. In either event the policy would be good and the claim would be lawful. We think there was sufficient proof that a lawful claim had been made by Bellah and paid by the plaintiff company, to entitle the plaintiff to be subrogated to the rights of the injured man.

The other objections of the appellant we consider to be without merit and to require no discussion here. Counsel for appellant conceded upon the oral argument that if defendant was liable under the law, the judgment was not excessive. It, therefore, appears that substantial justice has been done between the parties.

The judgment is affirmed.

Brittain, J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 9, 1919.

All the Justices concurred, except Olney, J., who was absent.