[Civ. No. 6022. First Appellate District, Division One.—December 31, 1927.]

A. F. SCHLEIF, Respondent, v. HARRIET FRANCES GRIGSBY, Appellant.

H. B. Churchill, H. L. Johnston, L. E. Johnston and A. W. Hollingsworth for Appellant.

Wallace Rutherford for Respondent.

PARKER, J., *pro tem.*—This is an appeal by defendant from a judgment in favor of plaintiff in an action for damages.

The action was tried by the court sitting with a jury, and the judgment followed the verdict returned. Defendant's motion for a new trial was denied.

At the outset a *résumé* of the facts sufficient to present generally the controversy will be given, and further detail of fact will accompany each point urged.

On May 21, 1923, the plaintiff was engaged in moving some furniture and personal effects from a place of previous employment. He had loaded these goods upon a small truck operated by another person. When the truck was in motion plaintiff was standing in the body thereof upon a small trunk and holding in place the small load. While plaintiff was thus riding he came in contact with a telephone wire, which caught him under the chin, throwing his head violently backward and causing him to be pitched and thrown from the truck to the ground with some force.

These facts seem to be practically admitted.

There are many minor claims of error involved in this appeal, but the dispositon of the case centers about two main contentions.

1. Appellant contends there is not sufficient evidence to show that defendant was guilty of any negligence whatsoever and that she was in no way legally liable.

It appears that at some time previous (1891) a number of people organized a mining corporation known as and called Palisades Mining Co. In the course of its business the company was granted a franchise by the supervisors of Napa County to construct and maintain a telephone line from the property of the company to the town of Calistoga. In the year 1907 by conveyance the company transferred all of its property, including the telephone line, to one R. F. Grigsby, who held the property until the time of his death. He died on January 27, 1923, leaving a will, wherein Harriet Frances Grigsby, defendant herein, was named sole devisee and nominated executrix. Thereafter the said will was admitted to probate and Harriet Frances Grigsby appointed executrix thereof, and at the time of the alleged injury, May 21, 1923, she was the duly appointed, qualified, and acting executrix of the last will and testament of R. F. Grigsby, deceased.

It is conceded by appellant that as such executrix the defendant would be personally liable for damages for torts arising out of property under her control. The appellant, however, claims that the telephone line complained of was

not at the time of the alleged accident being maintained by or under the control of the defendant as such executrix or otherwise. It is fairly deducible from the record that the telephone line in question was constructed to afford means of communication between the mining property of Palisades Mining Co. and the town of Calistoga and other points beyond, through the central station maintained in said town; that at all times the defendant's testator was a large owner or had a direct interest in the conduct of the said mining company, and there was a telephone connection from said line to the Grigsby home. Prior to the death of Grigsby, to wit, in January, 1921, R. F. Grigsby by agreement leased to one L. A. Thomas certain described real estate for a period of five years upon terms and conditions not necessary to detail here. Out of the fact of this unexpired lease arises appellant's claim that at the time of his death her testator had no dominion or control over the telephone line in question, and that after his death the defendant herein, as executrix, acquired no rights other than as subject to the lease in question. The record before us does not support appellant in this contention. The lease does not disclose, nor is there any other evidence to determine, just what property this lease covered. The description of the property demised does not show that it was the intent thereof to lease all of the property of the Palisades Mining Co., and there is not one word therein concerning the telephone line. The lease standing by itself offers no evidence of any change in the ownership or possession of the line, and particularly would this be true from the fact that the lessor Grigsby did reserve certain rights even under the lease, the extent of these rights being immaterial here. Whatever may be said concerning the rights, if any, that the lessee of the other property may have had in the telephone line generally, it is apparent that no use was made or right claimed by the lessee of that portion of the line running to the Grigsby home.

It is shown by the evidence that on May 18, 1923, prior to the alleged accident defendant caused to be published in a newspaper of general circulation published at Calistoga the following notice:

"NOTICE.

"Anyone found trespassing upon the property of the late R. F. Grigsby will be punished to the full extent of the law. Any information in regard to cutting my telephone wire will be rewarded.

"(Signed.)    MRS. R. F. GRIGSBY."

In addition there was evidence from which a fair inference could be drawn to the effect that defendant executrix and those acting for her had assumed possession and control of the telephone line in question.

Concluding, therefore, that possession and control have been sufficiently brought home to the defendant, we pass then to the duty of the defendant in the premises.

■ Appellant contends that in the absence of any statutory regulation it is the duty of one who maintains telephone wires to exercise ordinary care in their construction and maintenance in a reasonably safe condition to permit of ordinary travel. We may accept this rule and concede for the purposes hereof and with respect to the particular line in question that there is no statutory regulation as to the height at which the telephone line in controversy should be constructed. We wish it understood, however, that the concession is made solely for the purposes hereof and with reference only to this particular telephone line. For the purposes of this appeal we accept appellant's theory that the duty resting on her was to maintain the telephone line at a height sufficient for ordinary travel.

Naturally the term "ordinary travel" would relate to the locality in which the line was constructed.

■ Appellant cites the case of *Mayhew* v. *Yakima Power Co.*, 72 Wash. 431 [130 Pac. 485], as authority for this statement: "A person claiming a wire is too low must show that it is usual and customary for vehicles of equal or greater height to pass under it." In the case cited all that the court actually determined was that in the particular territory involved derricks forty-five feet high were not so generally hauled over the road as to constitute usual and ordinary travel. To adopt appellant's contention here we are called upon to determine that a telephone line nine feet and nine inches above the ground, is as a matter of law sufficiently high to permit of ordinary travel in the locality

involved. This we decline to do. The terms "ordinary travel" and "daily travel" are not the same. As may be the fact, in the instant case vehicles or loads ten feet high may not pass under the wire once a month, yet that would in no way determine that a load ten feet high was unusual or extraordinary. When we consider that ten feet is but little over four feet higher than the height of an average man, it is difficult to hold that height sufficient in law for all ordinary or usual travel. If we cannot hold as a matter of judicial knowledge that vehicles or loads in excess of nine feet nine inches are unusual or extraordinary, then the question becomes one of fact, and the determination of the trial court concludes the query. There is also testimony to the effect that at the point where the telephone line crossed the road the line was hidden by the branches of a tree and by the shade. With these facts in mind we think the jury had abundant evidence before it from which it might find the defendant negligent.

2. Incidental to this attack upon the verdict the appellant urges that even if it is found that the telephone line in question was negligently maintained, nevertheless there is no evidence of knowledge on the part of defendant.

We do not deem it necessary to review the many authorities cited to the point that one who maintains a telephone wire is entitled to a reasonable time to make repairs after obtaining actual knowledge or constructive notice of a defective condition of the wire. This subject is reviewed in Jones on Telegraph and Telephone Companies (2d ed.), p. 233 et seq. After citing many authorities the author concludes the discussion with the statement that in any of these cases the liability is a question of fact to be determined by the jury. This latter statement likewise is supported by much authority. There seem to be no parallel cases in this jurisdiction. But, adopting the doctrine as contended for we conclude that the rule would be and is that the owner or person in control of a telephone line would be charged, under the duty of maintenance, with the duty of inspection, and that proof of his knowledge would follow proof of facts from which said knowledge would ordinarily be inferred. The authorities cited in the text referred to unqualifiedly support this conclusion.

Coming then to the instant case the question of defendant's knowledge was a question for the jury to determine, and our inquiry goes only to ascertain if there were facts sufficient to warrant an affirmative finding as implied in the verdict. The evidence discloses that defendant prior to the death of her husband had lived many years in the vicinity; that she was familiar with the line and the country through which the same was constructed; that after the death of her husband she was his sole devisee, and likewise executrix of his will; that she had shown some knowledge of the line in general through the advertisement hereinbefore referred to; that a nephew residing with her had made certain repairs on the line preceding the accident. It further appears that the line was in a general condition of dilapidation in various places, and that this condition was observed by her prior to the accident, but, according to her testimony, she gave this no attention because she was of the opinion that the telephone line was out of her possession by reason of the lease referred to hereinbefore. We think this evidence sufficient to support the verdict on this issue.

3. It is next contended by appellant that the evidence shows as a matter of law that plaintiff was guilty of contributory negligence to a degree that precludes any recovery by him. The argument is based upon the following admitted facts: The accident upon which plaintiff's cause of action rests occurred on May 21, 1923. While plaintiff was leaving the ranch of one Mrs. Fowle and removing his goods therefrom he encountered the telephone wire as related. The plaintiff had moved on to the Fowle ranch in March, 1923, some two or three months prior to the date of the accident. When he went there he moved his furniture in a truck and encountered the same wire though with less misfortune. On his trip into the premises in March he saw the wire across the roadway and observed that it hung too low to permit his load to pass thereunder, and he cut or separated the wire and left it in that condition and passed through. The evidence further shows that during the few months he remained on the Fowle ranch he had occasion from time to time to note the presence of the wire, and at one time followed the line to the Grigsby home to learn what line it might be.

■ The appellant bases his contention first upon the doctrine of assumption of risk. This doctrine has its general application to the relation of master and servant; and the authorities cited cover cases wherein this relationship existed. ■ However, conceding that the theory underlying the doctrine of assumption of risk may have application to cases outside of this particular relationship of employment, it goes no further than the accepted standard of ordinary care under the circumstances. In other words, the doctrine of assumption of risk in other cases does not absolve the wrongdoer of all blame, but places upon the party injured a higher duty if he voluntarily enters a position of known danger (*Graff* v. *United R. R.*, 178 Cal. 171 [172 Pac. 603]; *Kelly* v. *Santa Barbara R. R.*, 171 Cal. 419 [Ann. Cas. 1917C, 67, 153 Pac. 903]). Therefore we shall dismiss the question of plaintiff's alleged negligence from the standpoint of his knowledge of the conditions as shown as far as that may be important here.

■ The evidence here shows that when plaintiff was obliged to cut or take down the wire upon entering the premises in March, some two or three months before the accident, the load of furniture which he was transporting on the road was piled to a height greater than the height of the load carried on the date of the alleged injury. While the record is not clear as to the exact height of the wire on the first occasion, yet it seems to be conceded by respondent that the wire was then strung at a height of ten and one-half feet. The rule of law contended for is as follows: Momentary forgetfulness of a known danger not induced by a sudden and adequate disturbing cause is contributory negligence, qualifying this by the statement that to forget is not negligence unless it shows a want of ordinary care. The qualification is not absolute but depends upon the facts of the particular case. There is a long line of cases holding that forgetfulness is as a matter of law negligence that will defeat recovery. (*McGraw* v. *Friend Terry Co.*, 120 Cal. 575 [52 Pac. 1004]; *Davis* v. *California St. R. R. Co.*, 105 Cal. 135 [38 Pac. 647]; *Brett* v. *S. H. Frank Co.*, 162 Cal. 735 [124 Pac. 437]; *Ergo* v. *Merced Falls Gas Co.*, 161 Cal. 334 [41 L. R. A. (N. S.) 79, 119 Pac. 101]; *Towne* v. *United Electric etc. Co.*, 146 Cal. 770 [2 Ann. Cas. 905, 70 L. R. A.

214, 81 Pac. 124].) It is upon this theory that appellant bases her claim of contributory negligence chargeable to respondent. However, as is said in *Jacobson* v. *Oakland Meat Co.*, 161 Cal. 430 [Ann. Cas. 1913B, 1194, 119 Pac. 653], one element in all these cases is the plaintiff's familiarity with the danger he forgot. To arbitrarily adopt as a standard of negligence *per se* the rule that if one may be charged with a knowledge, past or present, of a danger, he is precluded from recovery for injuries sustained therefrom and let the rule rest there for all cases would be to establish a doctrine dangerous in its application and unsound in principle and one not warranted by the present weight of authority. Courts are unwilling to declare that forgetting a known danger always amounts to negligence (*Jacobson* v. *Oakland Meat Co.*, *supra*). The true rule to be deducted from the cases cited is that the forgetfulness shown must be under circumstances sufficient to enable a court to determine that such lack of memory constituted negligence *per se*. In all of the cases cited there appear circumstances showing either an employment connected in some way with the dangerous instrumentality, or an intimacy therewith long continued, and further that the danger was of a nature readily apparent and easily discernible to the extent that injury could result only from a forgetfulness. In the case of *Davis* v. *California St. R. R. Co.*, *supra*, which is the strongest case supporting the contention of appellant, the court says: ''Each case rests upon its own peculiar circumstances. If the facts are doubtful as the result of uncertain evidence or conflicting testimony the question should be submitted to a jury.''

In *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 126 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 110], we find this statement: ''To forget is not negligence unless it shows a want of ordinary care, and it is a question for the jury.''

The case of *Anderson* v. *Southern California Edison Co.*, 77 Cal. App. 328 [246 Pac. 559], is in line with the foregoing, and is a recent authority for the conclusion hereinbefore reached.

■ In the case at bar the employment of plaintiff was in no way connected with the telephone line in question.

The evidence shows that some months before he had occasion to observe that it was strung too low to permit a higher load from passing under; that his work on the Fowle ranch was in proximity to the line, and that from time to time he had observed the line, and had opportunity to observe and did observe that it was in a general condition of disorder. However, he had no contact with the operation or maintenance of the line. He did have knowledge that prior to the accident a nephew of appellant had done some work of repair on the line. Further, and of particular importance is the fact that the line at the place in question was not readily observable. The evidence discloses that at the point where the line crossed the road there were trees of heavy foliage through which the line ran. The shade of the trees and the leaves and branches thereof tended to and did obscure and hide the line from view, practically concealing it. ■■■ We can readily take judicial knowledge of the fact that a single telephone wire, small in size, is often difficult to locate under favorable conditions. We think the question of plaintiff's contributory negligence was one for the jury, and the determination being that no negligence is shown, we hold there was sufficient evidence to sustain the verdict on that issue.

Appellant complains of the action of the trial court in the giving and refusal of certain instructions.

■■■ The court refused to instruct the jury on the question of the duties owed to a mere licensee. Appellant contended that she was entitled to show the relation between plaintiff and his employer. We cannot follow this line of argument. As far as the record discloses the plaintiff was rightfully enjoying the use of a public road or driveway, and what his rights or duties might have been at the point where his journey commenced, or at the point where it might end, can be of no importance here. Concededly there was no limitation upon his rights as a traveler upon the highway as far as any contractual or other relationship existed between plaintiff and appellant. In any event the evidence shows clearly that he had completed his employment at the Fowle ranch and was moving out. Obviously he was neither a trespasser nor a mere licensee even with respect to the premises from which he was departing.

The instructions given of which appellant complains had reference to the duties incumbent upon the owner of a telephone line. Appellant insists that the duties of an owner are enforced only when the owner has control of the operation and maintenance of a line, and that when an instrumentality passes out of the control of a person his responsibility for injuries inflicted by it ceases forthwith. While we might concede that the instruction should have been somewhat qualified, we find that the jury was properly instructed that it must be shown that the line was negligently maintained by appellant at the time of the accident. Appellant was likewise the owner of the line involved, and if responsibility of the owner was to be avoided it was incumbent upon her to set up such facts as would tend to that result. Appellant urges that under the instruction given the jury might readily have found that the line was out of her control, and yet found that she was the owner, and applied the rule given as to duties incumbent on the owner irrespective of control.

The instructions as a whole do not warrant such a conclusion. As a whole they sufficiently specify the individual duty resting upon appellant. Analyzing the effect of the claimed error it might be well argued that if this court placed the duty on the owner rather than the person in control it would be a favorable instruction as far as the said person in control was concerned and not subject to the complaint offered. On the other hand, if appellant complains that the instruction prejudiced her rights because she was in fact the owner, she nevertheless concedes that had the action been against her as such owner the criticised instruction correctly sets forth the law. In either case we do not find sufficient error to justify a reversal, and we further find it unnecessary to go to the constitution for shelter.

Other grounds urged by appellant are as to misconduct of counsel and rejection of testimony. Without detailing these various rulings, or setting out in detail the alleged misconduct, we find upon examination of the record nothing calling for any further action by this court. We are not hurrying over the contentions of appellant on these matters, but these points necessarily are connected up with the main points urged, and while it may be true that in an occa-

sional ruling the trial court would have been warranted in a contrary holding, nevertheless on the whole appellant was in nowise restricted in a full and fair presentation of her case, nor was respondent permitted undue privilege to the prejudice of appellant.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 27, 1928.