No. 18,093.

FRANK DAVID MATHIAS *v.* DENVER UNION TERMINAL
RAILWAY COMPANY.
(323 P. [2d] 624)

Decided March 24, 1958.    Rehearing denied April 14, 1958.

Mr. FRED M. MAZZULA, Mr. JOSEPH F. NIGRO, for plaintiff in error.

Messrs. YEGGE, BATES, HALL & SHULENBURG, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

MATHIAS was unsuccessful in the trial of his claim against The Denver Union Terminal Company in which he sought to recover damages for injuries to his person and property resulting from alleged negligence. Dissatisfied with the findings and judgment of the trial court, he instituted proceedings in error in this court, seeking to have the adverse decision reversed.

The complaint was based upon an express or implied invitation extended to Mathias to come upon the premises of The Denver Union Terminal Company (herein-

after referred to as "the defendant" or "the depot"); Mathias' presence upon the premises pursuant to the invitation, and the negligence of the defendant by reason of which Mathias fell through a glass canopy attached to the building of defendant, resulting in his injuries. Besides the general issue, defendant filed the affirmative defenses of assumption of risk and contributory negligence.

The defendant, a corporation, owns and operates the railway depot in Denver, serving several railroads with trains entering and leaving Denver. For years reporters and photographers for the several news media in Denver had access to the depot for the purpose of obtaining photographs of celebrities and delegations arriving or departing by train.

Mathias was a photographer for The Denver Post, and on April 22, 1953, was assigned by his employer to obtain photographs of members of out-of-state Chambers of Commerce who were expected to reach Denver that day. When he arrived at the depot with his equipment, he found a number of these members congregated near one of the exits.

He took some pictures of the group at this place, and decided he would attempt to get some overhead shots. To achieve his objective he ascended to the second floor of the depot and surveyed the situation from a number of windows. Each revealed some physical condition which barred an adequate view.

Having given up the idea of obtaining any overhead views, Mathias was in the act of returning to the ground floor when he was approached by some employees of the depot who, on learning of his mission, offered to assist him. Thereupon, an air-deflector was removed from a window by one of these employees and a desk was moved near thereto. Mathias was helped by an employee to the top of the desk, from which he stepped upon the window sill and began to ease his body down to the canopy, beneath which the men whom he desired

to photograph were standing; an employee then handed him his camera. Immediately thereafter the glass canopy upon which he intended to stand, gave away and he fell through the same to the sidewalk, sustaining personal injury and property damage.

The canopy was painted glass supported by ribs of steel, and had the appearance of metal. There were signs spaced on the canopy containing the following warning: "Danger glass roof keep off." Mathias denied seeing these warning signs. Although not large signs, it is not disputed that had he looked, he could have seen the one nearest the window out of which he descended upon the canopy.

At the conclusion of the evidence, briefs were submitted to the trial court, and in due course it found that Mathias was a licensee at the time of the accident and took the premises as he found them; that he stepped upon the canopy in disregard of an evident warning sign, thereby assuming the risk; that the depot was not negligent; and thereupon entered judgment against Mathias and for the depot.

The application by the trial court of the doctrine of assumption of risk arising from the relationship of property owner and licensee, as well as that of voluntary assumption of risk, to the facts as disclosed by this record, indicates a misconception of these doctrines.

Mathias entered the depot as an invitee, and so long as he used the areas of the depot common to passengers and those having an interest in the arrival or departure of passengers, he maintained his status as an invitee. *Union Depot, etc. Co. v. Londoner,* 50 Colo. 22, 114 Pac. 316, 33 L.R.A.N.S. 433; *Denver, etc. R. Co. v. Spencer,* 27 Colo. 313, 61 Pac. 606, 51 L.R.A. 121. It is a matter of common knowledge that the various news media have an entree to the facilities afforded by depots for the arrival and departure of passengers whose names and activities are news-worthy. *Atchison, T. & S. F. R. Co. v. Headland,* 18 Colo. 477, 33 Pac. 185, 20 L.R.A. 822.

In that portion of the premises his status was that of an implied invitee. His presence there was for the purpose of giving publicity to the arrival of passengers, a matter in which the depot had an interest. "It is well settled there that to come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." *Plummer v. Dill,* 156 Mass. 426, 31 N.E. 128, 32 Am. S.R. 463; *Gasch v. Rounds,* 93 Wash. 317, 160 Pac. 962; *Peregoy v. Western Maryland Ry. Co.,* 202 Md. 203, 95 Atl. (2d) 867; *Bennett v. Louisville, etc. R. Co.,* 102 U.S. 577, 26 L.Ed. 235; III Elliott on Railroads, 828.

But Mathias left the area used by passengers and ascended to an upper floor for the purpose of taking photographs. There he found the canopy an obstacle to his view of the persons he wished to photograph. Abandoning the idea, he was in the act of returning to that part of the premises devoted to the use of passengers when some employees of the depot offered to assist him in his project. On this point we find a dispute in the evidence: Mathias testified that he was told to get out on the canopy; the employees of defendant testified that they told him to use the window sill for a vantage point.

That the wind-break of the window was removed by a depot employee; that Mathias climbed on the sill and, with his back to the canopy, used his hands as a support preparatory to lowering himself to the canopy; that his camera was handed to him by one of the employees, are undisputed matters. If there was a dispute as to the extent of the invitation, or if the invitation of the employees was equivocal, these undisputed acts of Mathias and the employees give color and content to its meaning.

*Denver City Tramway Co. v. Brumley,* 51 Colo. 251, 116 Pac. 1051.

Although Mathias was an invitee while using that portion of the premises provided for passengers and others properly at the depot, and would have been restored to such status had he not been persuaded to accept the assistance of the depot employees, he was a licensee when he ventured upon the sill and canopy. *McNamara v. MacLean,* 302 Mass. 428, 19 N.E. (2d) 544; *Keeran v. Spurgeon Merc. Co.,* 194 Iowa 1240, 191 N.W. 99, 27 A.L.R. 579. When an invitee goes upon a part of the premises not intended for his use, and where he would not reasonably be expected to go, and his purpose in being there is his own, he becomes a licensee. *Southwest Cotton Co. v. Pope,* 25 Ariz. 364, 218 Pac. 152; *Wall v. F. W. Woolworth Co.,* 209 Ky. 258, 272 S.W. 730.

Ordinarily, the owner of premises owes the licensee the duty of not wilfully or wantonly injuring him. *Lunt v. Post Publishing Co.,* 48 Colo. 316, 110 Pac. 203, 30 L.R.A.N.S. 60, 21 Amn. Cas. 492. Perhaps a more comprehensive expression of the rule is that an owner owes to a licensee the duty of refraining from injuring him by wanton acts or through affirmative and active negligence. *Windsor Reservoir, etc. Co. v. Smith,* 82 Colo. 497, 261 Pac. 872.

Inhering in certain relationships is the doctrine of assumption of risk. It applies to the relationship between an owner of premises and a licensee. In this respect the licensee ordinarily assumes the risks incident to the conditions of the property upon which he ventures. *Lunt v. Post Publishing Co.,* supra. The much warmed-over expression that a licensee "takes the premises as he finds them" (*Gotch v. K. & B. Co.,* 93 Colo. 276, 25 P. (2d) 719, 89 A.L.R. 753) is another way of stating the rule.

This rule, applicable to the relationship of an owner of property and a licensee, was a determinant invoked by the trial court. Here we think the trial court

was in error, for once the owner of property becomes aware that a licensee is embarked upon a course which will likely result in injury to him because of a dangerous condition of the premises, he has a duty to warn the licensee, and the failure to give such warning amounts to wilfulness or wantonness on the owner's part. *Lunt v. Post Publishing Co.,* supra.

Notwithstanding knowledge of a danger, justifiable distraction or forgetfulness may excuse a party injured thereby. *Mountain States Tel. & Tel. Co. v. Sanger,* 87 Colo. 369, 287 Pac. 866; *Schleif v. Grigsby,* 88 Cal. App. 174, 263 Pac. 255. Where, as here, the licensee is apparently oblivious to the danger involved or of warning signs, and proceeds to do an act to which the owner of the property, through his agents and employees, renders assistance without giving oral notice of the danger, and is injured as a result, the licensee does not assume the risk, but may maintain an action against the owner on the ground that the latter was guilty of affirmative and active negligence.

The doctrine of voluntary assumption of risk in the law of torts is expressed in the broad maxim, "volenti non fit injuria." Knowledge and appreciation of the danger are essential ingredients of this principle. *D.&-R.G.R. Co. v. Gannon,* 40 Colo. 195, 90 Pac. 853, 11 L.R.A.N.S. 216. Had the evidence shown that Mathias knew and appreciated the danger in stepping upon the canopy, the trial court's ruling would have been proper. Its determination that Mathias had stepped upon the canopy in disregard of the evident warning signs, thereby voluntarily assuming the risk, was erroneous and an incorrect application of the doctrine under the facts of this case.

The judgment is reversed, and the cause remanded with directions to grant a new trial.

MR. JUSTICE MOORE and MR. JUSTICE HALL not participating.