[Civ. No. 6436. Third Appellate District.—January 28, 1941.]

EUGENE MONROE, Respondent, v. SAN JOAQUIN LIGHT AND POWER CORPORATION (a Corporation), Appellant.

Thos. J. Straub, W. H. Spaulding and F. H. Pearson for Appellant.

C. Ray Robinson, Willard B. Treadwell and W. Eugene Craven for Respondent.

THE COURT.—This is an appeal from a judgment by the court awarding damages to respondent for personal injuries. The injuries, resulting from electric shock, were received by the respondent while he was performing work as an employee of The California Milk Products Company. Respondent's employment with the Products Company consisted in carrying out duties both as fireman and common laborer. Upon the occasion of the injury, Mr. Monroe, the respondent, and a fellow employee, Mr. Lopez, were directed by their foreman to enter the company transformer yard or substation for the purpose of clearing out a growth of weeds. The men were supplied with the proper tools for their work and were repeatedly warned by the foreman as to the dangerous nature of the substation electrical equipment, and to keep away from the electric wires. There was also a large warning sign placed upon the outside of the wire fence enclosing the transformer yard, which read: "High Voltage, Danger, High Voltage". Both men admittedly read this sign.

The two men proceeded to their work as directed, and had been working for perhaps a half hour prior to the time of the accident. Lopez testified that he heard a sputtering of electricity and a loud groan, and that upon looking around he perceived that respondent was up against the electric wire which was connected to the first of the three transformers; that the electricity was sputtering on respondent's shoulder and that after a brief interval respondent dropped to the ground. Respondent testified that he had cleaned out some weeds near the first transformer and that he had then walked over to discuss their disposal with Lopez; that he had returned

to work when the accident happened. He testified as follows: "Well, all I knew it hit me all at once and I felt as though something was going to tear me to pieces,—I couldn't holler or make any noise,—I couldn't see,—I just finally went down to the ground on my head there." Lopez and respondent were the only witnesses present at the time of the accident. There is no evidence in explanation of the immediate cause for the contact with the electric wires. There were no eye witnesses to that circumstance as Lopez had turned his back to respondent, and the testimony discloses a failure on his part to perceive the contact with the wire.

The transformer yard which was the scene of the accident is located adjacent to the Products Company plant, and the electrical equipment therein, consisting of transformers, poles, wiring, etc., was provided and installed by appellant Power Corporation for the purpose of facilitating the use of electrical power necessary for production carried on by the Products Company. This equipment, which may be termed "transformation facilities" was installed by the Power Company under a contract entered into with the Products Company on September 27, 1929, and the transformation facilities were completely installed by the early part of 1930. The contract provided that the Products Company should pay the Power Corporation in five equal annual installments,—the title to the transformers and equipment to remain in the Power Corporation until payment in full by the Products Company. It was also provided the Power Corporation would repurchase the transformation facilities from the Products Company in the event of certain changes taking place in the Power Corporation's schedule. The Products Company made their last and final payment on the transformers under this contract in 1934.

During the period of service under this contract and until the date of respondent's injury on May 12, 1937, the operation and maintenance of the substation electrical equipment were taken care of by employees of both the Power Corporation and the Products Company. There were two padlocks on the substation gate. One lock was owned by the Power Corporation and the other owned by the Products Company. The opening of either lock permitted access to the transformer yard, as the two padlocks were interlocked within one another.

The Products Company employed their own electrician for the purpose of operating the substation and he took care of

the repair work, with the exception of a few instances when employees of the Power Corporation did certain repair work, which was necessary from time to time subsequent to the installation of the electrical equipment.

It appears that the Power Corporation was called upon for assistance only when the electrician employed by the Products Company was unable to perform the repair work, and with few exceptions, the only employee of the Power Corporation having occasion to enter the transformer yard was the meter reader. Except for the work performed by the Products Company's electrician, the only occasion for sending employees within the enclosure was for the purpose of clearing out the weeds about once a year.

The three transformers in this enclosure were fixed to concrete bases set in the ground and were approximately two feet apart. The wires supplying current to these transformers drop from an overhead service and connect with leads between the transformers in pairs. Leading out from the first transformer in line, which transformer is adjacent to the meter box, another wire, which extends from a position some three feet from the ground carries up and across at an angle contacting an insulator which is fixed to a cross-arm on a pole. This cross-arm is located approximately five feet from the ground.

The respondent came in contact with this wire at a point approximately four feet from the ground and some twelve inches from the position of the insulator located upon the cross-arm. Mr. Simonson, an expert electrical engineer, testified that this was a copper wire insulated with a weather proofing cover. This covering consists of two or more cotton braids or a tape and braid which has been saturated with a compound, and resembles in outward appearance an insulated wire. Mr. Simonson testified that this type of covering was of very little, if any, value as an insulation against electric current. Appellant, Power Corporation, does not contend that the weather-proof covering enclosing the wire with which respondent came in contact, was sufficient insulation against 6,600 volts to ground, which was being carried by the wire.

With the exception of a few minor changes the electrical equipment within the transformer yard, including the weather proof covered wire, was in the same condition at the time of injury to respondent, as existed at the time of installation.

The complaint alleges negligence on the part of appellant in the installation and maintenance of the transformation facilities and alleged that such negligence constituted a proximate cause of the injuries to respondent.

The answer of appellant denies any negligence in the construction or installation of the electrical equipment and further denies maintenance or operation of such equipment subsequent to the installation thereof in September of 1929, and alleges ownership and operation of the transformers in the California Milk Products Company since September of 1929. It is denied that installation of the electrical equipment was not in accordance with General Order No. 64–A of the California Railroad Commission, and as a separate answer and defense alleges contributory negligence on the part of respondent.

The findings of the trial court are that subsequent to September, 1929, and prior to May 12, 1937, appellant Power Corporation did carelessly and negligently construct, install, and maintain the transformation facilities upon the premises of the California Milk Products Company; that the construction and installation of the transformers and equipment was not in accordance with General Order No. 64–A of the California Railroad Commission; that, as a proximate result of appellant's negligent conduct, a current of electricity passed through the body of respondent, causing injury to him; that the allegation of ownership of the transformers by the Products Company since September of 1929, is untrue; that the allegations contained in the separate answer and defense of contributory negligence on the part of respondent were untrue, and that therefore respondent is entitled to judgment against appellant, Power Corporation.

■ The briefs disclose a dispute between the parties as to ownership of the transformation facilities and as to the obligation of maintenance thereof up until the time of the accident on May 12, 1937. It is necessary that the issues of ownership and obligation of maintenance be settled before discussing the fundamental question of appellant's liability for respondent's injuries. The issues of ownership and maintenance, do not, however, control the question of appellant's liability under the circumstances presented by this case. The trial court does find, and there is ample support therefor, that subsequent to September, 1929, and prior to May 12, 1937, appellant, Power Corporation, ''maintained and

operated'' the transformers upon the premises of Products Company, etc. The retention of title to the electrical equipment by the Power Corporation until final payment under the contract on May 19, 1934, was in conformity with the duty to maintain and service such equipment. Consequently the evidence does disclose that there was a duty to, and the company did, maintain this electrical equipment during the life of the contract, but the finding that there was a duty of ''maintenance and operation'' subsequent to the date of transfer is not supported by the evidence. And as the meaning of the term ''operated'' as used in conjunction with ''maintained'' in the findings, is not made sufficiently clear, we conclude that the evidence does not support a finding that the Power Company operated the transformation facilities.

▇ The question as to whether appellant has been guilty of actionable negligence is to be determined by a consideration of the circumstances preceding and attendant at the time of respondent's injury. In order to constitute actionable negligence, it is necessary that the following three elements be present: (1) The legal duty to use due care; (2) a breach of that legal duty; and (3) that such breach is the proximate or legal cause of the resulting injury. (*Johnstone* v. *Panama Pacific I. E. Co.*, 187 Cal. 323 [202 Pac. 34].)

▇ Assuming that appellant was negligent in regard to the installation of the electrical equipment, and that such negligence constituted the proximate cause of injuries received by respondent, to whom, we shall assume, appellant owed a legal duty to use due care, we are then of the opinion that the lack of ownership, control, or obligation to maintain such electrical equipment is immaterial in determining liability.

▇ One who supplies electricity is under a legal duty to use due care in the construction and installation of the necessary electrical facilities. This legal duty is necessarily extended to any person who might with reasonable anticipation be endangered by faulty or improper electrical equipment or installation. The duty to use due care is obviated only as to trespassers or individuals who may be unlawfully upon the premises at the time of the injury. If the facts in a particular case disclose negligence on the part of an electric company in the installation of electrical equipment, either in the omission to do something which an ordinarily prudent person would have done under the given circumstances, or in the doing of something which an ordinarily prudent person would

not have done under such circumstances, the transfer of ownership and maintenance does not in and of itself relieve the electric company from liability to an individual who has been injured as a result of the acts or omission constituting the negligence. Consequently, where the injury results from improper installation or material, and this be proven negligent, it is immaterial that the wire or equipment which carries the electric current is not owned or controlled by the negligent party at the time of the injury. (20 Corpus Juris, 365; *Appalachian Power Co.* v. *Mitchell,* 145 Va. 409 [134 S. E. 558].)

If the particular wire causing the injury to respondent had been sufficiently insulated at the time of installation and became defective through weathering or neglect for instance, after transfer of the equipment to the Products Company, the ownership and duty of maintenance as to such equipment would be material in determining liability.

The foregoing principle pertaining to the liability for negligence of one failing to use due care in the installation of electrical equipment, is not inconsistent with, nor contrary to, any of the conclusions reached in the cases cited by appellant. Those cases, which include *Hill* v. *Pacific Gas & Electric Co.,* 22 Cal. App. 788 [136 Pac. 492], *Roberts* v. *Pacific Gas & Electric Co.,* 102 Cal. App. 422 [283 Pac. 353] , and *Ray* v. *Pacific Gas & Electric Co.,* 3 Cal. App. (2d) 329 [39 Pac. (2d) 812], do not raise the question of liability for negligence in the original construction or installation of electrical facilities.

We are of the opinion that there is substantial evidence to support the finding of the trial court that appellant did carelessly and negligently construct and install the electrical equipment and further conclude that the evidence supports the finding that the injuries received by respondent were caused as a proximate result of such negligent installation.

■■ The conduct of an individual is negligent when it creates an unreasonable risk of harm to some general class of persons. Unquestionably, as clearly disclosed by the evidence, the particular wire with which respondent came in contact was insufficiently insulated against shock. This wire carried 6,600 volts to ground and was only encased in a weatherproof covering. The fact that such a covering was insufficient as insulation against the particular voltage being carried was not denied by appellant.

There being no doubt, therefore, as to the probable resulting effect of contact with this particular wire at a time that it was charged with 6,600 volts of electricity, the question then arises, as to whether the installation of the wire within three feet of the ground constituted an unreasonable risk of harm to a class of persons, within which class respondent may be deemed a member. We believe that this question should be answered in the affirmative, and consequently conclude that the conduct of appellant amounted to the breach of a legal duty of due care owed to respondent.

The appellant, Power Corporation, had knowledge of the fact at the time of the erection and installation of the electrical equipment, that employees of the Products Company would necessarily be required to work in and about the substation enclosure. This conclusion follows from the fact that the transformation facilities were to become the property of the Products Company as so provided by the contract. It is no more than reasonable that appellant should have anticipated that some employee, such as respondent, would be required to perform some type of manual labor within the enclosure.

In applying the test of foreseeability, for the purpose of determining negligent conduct, it was not necessary that appellant have knowledge of the fact that employees might be required to clear out weeds within the transformer yard. A considerable portion of the transformer yard was left in its natural state, and the growth of weeds therein was simply a normal act of nature. The necessity of requiring employees to clear out the growth of weeds from time to time was one of the circumstances which an ordinarily prudent person should have anticipated.

The duty of due care required in the use of electricity is well stated in 1 Joyce on Electricity, section 438a, as follows:

"The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise, under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it."

Appellant was under a legal duty to use due care in avoiding injury to respondent, and there was a breach of that

duty in the negligent installation of the electrical equipment. In view of the existing circumstances, appellant should have either properly insulated the high power wires, or placed them beyond the danger of contact with individuals who would be required to work within close proximity to such wires. Either safeguard against injury might have easily been taken. As disclosed by the evidence, insulation was readily obtainable, which would have been sufficient as against shock from a wire carrying up to 7,500 volts to ground. Mr. Simonson testified that such types of wire were commercially sold and used in the vicinity. Appellant had the choice of an alternative safeguard, either insulation of the high power wires or the placing of the transformers and wires upon an elevated platform. This would have prevented injury to employees working about the transformer yard.

As indicated, the negligence of appellant consisted in a failure to use due care under the circumstances, and this being true, it is immaterial as to whether or not the installation of the transformation facilities was governed by General Order No. 64–A of the California Railroad Commission. Consequently, we do not deem that it is necessary to discuss the question of the applicability of the particular order of the commission.

Appellant strongly urges that the sole proximate cause of the accident in this case, aside from respondent's contributory negligence, was the act of the Products Company foreman in admitting respondent into the transformer yard without calling on appellant to turn off the electric power. The trial court having found that the negligent conduct of appellant was the proximate cause of respondent's injuries, such finding is necessarily against any contention in regard to an independent intervening act as a superseding cause of the injuries. A well stated rule of proximate cause is found in *Merrill* v. *Los Angeles G. and E. Co.*, 158 Cal. 499, at page 503 [111 Pac. 534, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559]. The language is as follows:

" . . . Consequences which follow from the original wrong in unbroken sequence, without an intervening sufficient independent cause, are natural and proximate, and for these the original wrongdoer is responsible."

Applying the foregoing rule of causation to the circumstances in the present case we can find no error in the conclusions of the trial court in regard to the proximate cause of

respondent's injuries. It certainly would be transgressing the power of that court to decide, as a matter of law, that the conduct of respondent's superior constituted an independent intervening act sufficient to break the chain of causation, and be deemed a superseding cause.

The trial court having found against appellant in regard to the separate defense of contributory negligence, we have examined the record, and it is our opinion that there is substantial evidence in support of such finding. The burden of proving contributory negligence was on appellant, and in order to find that respondent's negligence constituted a defense, such negligent conduct must proximately contribute to the injury. Proof of careless conduct or acts amounting to mere negligence is insufficient to establish such a defense. (*Rush* v. *Lagomarsino*, 196 Cal. 308 [237 Pac. 1066] ; *Gaster* v. *Hinkley*, 85 Cal. App. 55 [258 Pac. 988].)

We conclude that the injuries to respondent were proximately caused by appellant's failure to use due care in properly insulating the high power wire with which respondent came in contact, and that such injuries were not proximately contributed to nor caused by any failure to exercise due care on the part of respondent.

The appellant has not contended that the damages allowed by the trial court are excessive and consequently we are not concerned with that issue.

The judgment is affirmed.

A petition for a rehearing was denied February 27, 1941, and appellants' petition for a hearing by the Supreme Court was denied March 28, 1941.