[Civ. No. 12518. First Dist., Div. Two.   June 15, 1944.]

RUBY JACKSON et al., Respondents, v. UTICA LIGHT & POWER COMPANY (a Joint Venture Association) et al., Appellants.

Charles V. Barfield for Appellants.

Blewett & Blewett and Robert G. Partridge for Respondents.

SPENCE, J.—Plaintiffs, as the surviving wife and minor child of Harold Jackson, deceased, brought this action to recover damages for the death of said deceased. After a trial by jury, judgment was entered upon the verdict in favor of plaintiffs and against defendants in the sum of $20,000. Defendants appeal from said judgment and from the order denying their motion for judgment notwithstanding the verdict.

Deceased was employed by a construction company as a power shovel operator on a project involving the realignment of portions of the state highway in Calaveras County between Angels Camp and San Andreas. On June 19, 1941, he met his death from electrocution while engaged in this employment when his power shovel came in contact with a farmer's telephone wire which was strung upon the same poles as were the high voltage power lines of defendants. There were no eyewitnesses to the accident, the deceased having been found dead on the ground near the power shovel shortly after the accident. The sheave at the end of the boom on the power shovel was still in contact with the telephone wire. One of the power poles, owned and maintained by defendants, had broken at the point where the telephone wire crossarm had been bolted to the pole thereby permitting defendants' high voltage power lines to fall upon the telephone wires. The power pole which had broken was not a pole immediately adjacent to the scene of the accident but was the second pole easterly from the scene. The two power poles immediately adjacent to the scene and the power lines between them remained intact. The power poles were spaced approximately 200 feet apart.

Defendants phrase their main contentions in various ways which may be summarized by stating that the defendants contend that the evidence was insufficient to show actionable negligence on the part of defendants and that the uncontradicted evidence showed that deceased was chargeable with contributory negligence as a matter of law.

The essential elements of actionable negligence are set forth in *Monroe* v. *San Joaquin Light & Power Corp.*, 42 Cal.App. 2d 641 at page 647 [109 P.2d 720], as follows: "In order to constitute actionable negligence, it is necessary that the following three elements be present: (1) The legal duty to use due care; (2) a breach of that legal duty; and (3) that such breach is the proximate or legal cause of the resulting injury." ■ There can be no question but that defendants, who admittedly owned, maintained and operated the power lines in question, were under the general legal duty to use due care in the construction, maintenance and operation of said lines so as to avoid injury to persons and property. That legal duty has been defined in numerous authorities. (*Irelan-Yuba etc. Min. Co.* v. *Pacific Gas & Elec. Co.*, 18 Cal. 2d 557 [116 P.2d 611]; *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678]; *Anstead* v. *Pacific Gas & Elec. Co.* 203 Cal. 634 [265 P. 487]; *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 P. 587]; *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Cal.App.2d 641 [109 P.2d 720]; *Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal.App. 422 [283 P. 353].) ■ Nor can there be any question concerning the sufficiency of the evidence in the present case to show that defendants were chargeable with a breach of that duty.

Plaintiffs alleged in their complaint that "Said poles and each of them at the said time and place supporting said wires were deterioriated and rotted and weakened and by reason thereof the same and each of them were unsafe. . . ." There was an abundance of evidence both oral and by way of photographs to support these allegations with respect to the broken pole. Said pole had been in use for several years in excess of the average life of a wooden pole and it did not appear that it had been inspected in any manner since 1937. It further appeared that such prior inspections as had been made of the poles had been infrequent and casual. The broken pole was described as "riddled with woodpecker holes and dry rot" and "practically nothing remained"; as "de-

teriorated to where it has no strength in it"; as "one hundred per cent cull, nothing but dry rot"; as "rotted off completely, clear through, and only the stub was holding the pole up"; as "unsafe for many years"; as "so badly attacked by fungi or rot that it had no strength left"; as "very much deteriorated with dry rot and termite holes." A witness for defendants testified that in his opinion, the woodpecker holes "caused the failure of the pole" and he further testified that if prior inspection had disclosed the condition of the pole, it would have been replaced. There was also ample evidence to show that the badly deteriorated condition of the pole could have been seen upon an inspection made from the ground. An electrical expert, called by plaintiffs, testified that proper installation and maintenance of a power line requires that the poles should be stronger than the tensile strength of the wire in order that the pole should be able to withstand the breaking of the wire; and that a pole which is maintained according to common standard practice would not be broken by a pull placed upon a twelve-gauge galvanized iron wire such as was used in the farmer's telephone line which was suspended beneath defendants' high power wires.

In arguing the question of the sufficiency of the evidence defendants lay great stress upon the question of proximate cause. They give their version of how the accident happened, claiming that the pole was broken by reason of the strain placed upon the telephone wire by the power shovel. They then claim that the act of the deceased in permitting the power shovel to come in contact with the telephone wire was the proximate cause of his death and that defendants' negligence was not the proximate cause but was merely "a prior and remote cause which did no more than furnish the condition" which made the injury possible through the intervening act of the deceased. There is no direct evidence as to the exact time or cause of the breaking of the pole. It appears from the evidence that the pole was in such a badly deteriorated condition that it might have broken at any time without the application of any force other than the strain of the wires suspended therefrom; and it further appears that it might have broken at any time from the application of any slight strain placed upon the pole or wires through the application of any external force, animate or inanimate. We will assume, for the purpose of this discussion, that the immediate

cause of the breaking of this deteriorated pole was a strain placed upon said pole through the contact of the power shovel with the telephone wire as claimed by defendants. This assumption, however, does not necessarily mean that the negligence of defendants was not the proximate or legal cause of the death of the deceased.

The doctrine of "proximate cause" or "causal relation necessary to the existence of liability" is one which has presented some difficulty in its application to cases grounded upon negligence in which an act of the plaintiff or another has intervened in such manner that the intervening act may be said to be immediate cause of the resulting injury. There are many authorities holding that the intervention of such act does not necessarily prevent the negligence of the defendant from being the proximate cause of the resulting injury. (*Anstead* v. *Pacific Gas & Elec. Co.*, 203 Cal. 634 [265 P. 487]; *Emery* v. *Pacific T. & T. Co.*, 43 Cal.App.2d 402 [110 P.2d 1079]; *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Cal.App.2d 641 [109 P.2d 720]; *Langazo* v. *San Joaquin L. & P. Corp.*, 32 Cal.App.2d 678 [90 P.2d 825]; *McCormick* v. *Great Western Power Co.*, 134 Cal.App. 705 [26 P.2d 322]; *Lim Ben* v. *Pacific Gas & Elec. Co.*, 101 Cal.App. 174 [281 P. 634]; *Howell* v. *San Joaquin L. & P. Co.*, 87 Cal.App. 44 [261 P. 1107]; *Carroll* v. *Central Counties Gas Co.*, 74 Cal.App. 303 [240 P. 53]; *Pezzalia* v. *San Joaquin L. & P. Co.*, 60 Cal.App. 786 [214 P. 285]; *Royal Ind. Co.* v. *Midland C. Public Service Corp.*, 42 Cal.App. 628 [183 P. 960]). While the question of whether the negligence of a defendant may be held to be the proximate cause of the injury despite such intervening act is a question of law for the determination of the court (*Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678]; *Stackpole* v. *Pacific Gas & Elec. Co.*, 181 Cal. 700 [186 P. 354]; *Hayden* v. *Paramount Productions, Inc.*, 33 Cal.App.2d 287 [91 P.2d 231]), the foregoing authorities clearly indicate the question of whether the negligence of a defendant should be held to be the proximate cause of the injury is ordinarily a question of fact for the determination of the jury. In discussing the question of proximate cause, the courts frequently employ the expressions "foreseeability," "foreseeableness," "reason to anticipate," "reasonably to be anticipated," "realizable likelihood" and other similar expressions, but it is not always clear whether the

reference is to the foreseeability of the type of resulting injury or the foreseeability of the type of act which is the immediate cause of the resulting injury. In the Restatement of the Law of Torts, section 430 et seq., the necessary "causal relation" is said to be determined on the basis of whether defendants' negligence was a "substantial factor in bringing about the harm" (§ 431; see, also, § 433); and that "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable" (§ 435). It is there said that if the question of whether defendants' negligence is a "substantial factor" is "open to a reasonable difference of opinion," the question is one for the jury. (§ 434.) And even in this state where the test seems to be based generally upon foreseeability, it has been said that a defendant may be liable even though "it might not have foreseen the particular injury which did happen" (*Lim Ben* v. *Pacific Gas & Elec. Co.*, 101 Cal.App. 174 [281 P. 634]; *Carroll* v. *Central Counties Gas Co.*, 74 Cal.App. 303, 307 [240 P. 53]) and that it is not necessary that defendant should have been able to anticipate the "precise form of the consequential injury" (*Rocca* v. *Tuolumne County Elec. etc. Co.*, 76 Cal.App. 569, 584 [245 P. 468]) or the "precise accident" (*Royal Ind. Co.* v. *Midland C. Public Ser. Corp.*, 42 Cal.App. 628, 635 [183 P. 960].)

The discussion of the question of proximate cause in the present case requires the statement of further facts. The pole line at the scene of the accident did not follow the curve of the original highway but cut across a field in approximately a straight line along the new right of way which had been acquired to straighten the highway at that point. The poles in the vicinity of the scene of the accident were approximately 50 feet distant from the original highway. These poles varied in height from 25 to 35 feet. The upper crossarms of the poles carried defendants' high voltage power lines while the lower crossarms, which were several feet below, carried the telephone wires. These telephone wires sagged between the poles and were about 12 feet below the power lines and about the same distance above the ground at the scene of the accident. The telephone wires were not dangerous to human life and could be safely touched with bare hands.

Defendants stress the fact that the poles at this point

were removed some distance from the original highway and were "far from any danger of collision from traffic on the highway." They further stress the fact that no evidence was introduced to show that the ground immediately under the power line at this point "was ever used by vehicles or agricultural implements or machinery." They therefore contend that defendants "could not reasonably be required to anticipate" that the poles would be subjected to a strain such as they claim was caused by the contact of the power shovel with the telephone wire. It appears unnecessary to discuss the question of what defendants could have reasonably been required to anticipate prior to the time that they received notice on January 11, 1941, that construction work was about to be started on the highway project. That notice was received over five months before the date of the accident, which was June 19, 1941. The letter from the Division of Highways of the Department of Public Works of the State of California called attention to the proposed project, enclosed copies of other letters and stated, "We are forwarding to you under separate cover a set of layout plans showing poles belonging to your company that will have to be moved in order to clear our right of way. . . . As this project will be under construction at an early date, we would appreciate having you proceed to move your facilities at once." At the conclusion of the letter, it was stated "As we expect to have this road under construction at an early date, your attention to this matter will be appreciated." The highway project had been contemplated for several years, some of the rights of way having been acquired as early as 1936, but the contract for the work was not let until the latter part of May, 1941, and the work was not actually commenced until June 8, 1941. Despite the notice contained in the above mentioned letter of January 11, 1941, there is no evidence to show that defendants inspected their poles or removed them or that they did anything in response to said notice until a few days prior to the accident when they started the removal of some of the poles. At that time, the employees of defendants saw the deceased operating the power shovel along the new right of way in the general vicinity of the accident and along the line of the power poles.

Defendants state that there is no evidence that defendants were notified to move the pole line "within a specified time"

as provided by section 680 of the Streets and Highways Code. It may be conceded that the above quoted letter did not fix a specified time for removal of the poles but we are not dealing with the sufficiency of the letter as a notice requiring removal under said code section. The letter was obviously sufficient to put defendants upon notice that construction work would be commenced at an early date and that road building equipment would be used in this work along the new right of way. From the time of receiving that letter, it was as foreseeable that the poles and wires along the new right of way might be subjected to strains from vehicles and other equipment as it was foreseeable that poles and wires along the original highway or in fields where agricultural implements were customarily used might be subjected to such strains. We are therefore of the opinion that, under the authorities cited above, the question of whether the negligence of the defendants was the proximate cause of the death of the deceased was a question of fact and that the trial court properly left that question to the determination of the jury.

Defendants cite and rely upon *Stasulat* v. *Pacific Gas & Elec. Co.,* 8 Cal.2d 631 [67 P.2d 678]; *Stackpole* v. *Pacific Gas & Elec. Co.,* 181 Cal. 700 [186 P. 354], and *Hayden* v. *Paramount Productions, Inc.,* 33 Cal.App.2d 287 [91 P.2d 231], in all of which cases the question of proximate cause was held to be one of law rather than of fact. We believe these cases are all distinguishable upon their facts and that the basis of these decisions is explained in the reasoning found on pages 636 to 638 of the Stasulat case. It was there recognized on page 638 that ''as a general rule, the question whether the original negligence is a proximate cause of the injury is one of fact for the jury'' but it was held that there was no evidence to show that the intervening act ''was an act which should reasonably have been foreseen and anticipated.''

We find no merit in defendants' contention that deceased was chargeable with contributory negligence as a matter of law. We may still assume, as claimed by defendants, that the immediate cause of the breaking of the deteriorated pole was a strain placed thereon through contact of the power shovel with the telephone wire. The evidence showed, however, that this apparently harmless telephone wire was suspended approximately 12 feet from the ground at the scene of the accident and that the power shovel was working over rolling, uneven ground in that vicinity. It is true, as stated

by defendants, that the evidence showed that the power shovel, while being operated by deceased, had come in contact with the telephone wire on two previous occasions on the same day, on which occasions another employee of the construction company had lifted the telephone wire over the boom. We are of the opinion, however, that the question of whether deceased was chargeable with negligence in bringing the power shovel in contact with the telephone wire was a question of fact for the jury and that in the determination of this question, plaintiffs were entitled to the benefit of the presumption that the deceased had used due care for his own safety and had not been guilty of negligence. (*Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; *Eastman* v. *Atchison, T. & S. F. Ry. Co.,* 51 Cal.App.2d 653 [125 P.2d 564]; *Gregg* v. *Manufacturers Bldg. Corp.,* 134 Cal.App. 147 [25 P.2d 43, 1014].)

█ In the discussion of the question of actionable negligence, defendants contend that deceased was a trespasser upon defendants' power line and that defendants were therefore under no legal duty to exercise due care with respect to deceased as such trespasser. It is a sufficient answer to this contention to state that if deceased could be classed as a trespasser in his relationship to the owners of the land or in his relationship to the owners of the telephone line, he was not a trespasser upon defendants' power line and could not therefore be classed as a trespasser in his relationship to defendants. Even assuming that deceased could be classed as a trespasser in his relationship to others, defendants were not thereby relieved of the duty of exercising due care toward him in the maintenance of their power line. (*Roberts* v. *Pacific Gas & Elec. Co.,* 102 Cal.App. 422 [283 P. 353]; *Langazo* v. *San Joaquin L. & P. Co.,* 32 Cal.App.2d 678 [90 P.2d 825].)

█ Defendants further contend that the trial court erred in refusing to admit in evidence a safety order of the Industrial Accident Commission, which order prohibited the operation of equipment under high voltage lines when it was possible to bring such equipment within six feet of such high voltage wires. We are of the opinion that there was no prejudicial error in the ruling of the trial court. There was no evidence to show that the power shovel, or any part thereof, was ever brought within six feet of the high voltage

lines and the mere fact that it could have been brought within that distance, although it was not, could not have had any causal connection with the happening of the accident.

Defendants further contend that the trial court erred in the giving and refusing of various instructions. Defendants first claim that it was error to give any instructions on the presumption of due care on the part of the deceased. They cite *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059] and claim that any such presumption was dispelled by the evidence adduced by plaintiffs. We find nothing in that testimony, however, which is "wholly irreconcilable" with the exercise of due care on the part of the deceased and therefore find no error in the giving of said instructions. Defendants also complain of an instruction to the effect that deceased was not a trespasser. We have heretofore discussed the subject of the status of deceased in his relationship to defendants and do not believe that any claim of error may be predicated upon the giving of the challenged instruction. Defendants also complain of the giving and refusing of various instructions on negligence and contributory negligence but a reading of the instructions as a whole shows that the jury was fully and fairly instructed on these subjects. Defendants also complain of the refusal to give an instruction based upon the above mentioned safety order of the Industrial Accident Commission. As we have heretofore expressed the view that there was no prejudicial error in refusing to admit said safety order in evidence, it follows that there was no prejudicial error in the refusal to instruct the jury with respect thereto.

The judgment and order denying defendants' motion for judgment notwithstanding the verdict are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing was denied July 15, 1944.