[Civ. No. 17406.   First Dist., Div. One.   Mar. 24, 1958.]

DOROTHY KATHLEEN PARKER, an Incompetent Person, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

598

Paul Friedman for Appellant.

Dion R. Holm, City Attorney, C. Wesley Davis and Robert M. Desky, Deputy City Attorneys, for Respondent.

BRAY, J.—A jury rendered a verdict in favor of plaintiff and against defendant city and county of San Francisco for $80,000.* The trial court granted judgment notwithstanding the verdict in favor of defendant. Plaintiff appeals.

*This amount is subject to a credit of $40,000 paid plaintiff by defendants United Parcel Service and its driver.

The sole question presented is whether there was any evidence of negligence of defendant proximately contributing to the accident.

## EVIDENCE

Plaintiff was a passenger in defendant's motor bus driven by a driver of six years experience. The bus stopped at the Fillmore Street intersection of Sacramento Street on which latter street the bus was proceeding. The marked bus zone was located across Fillmore Street to which zone the bus proceeded. This zone was 55 feet in length and 6 feet wide. Occupying the front end of the zone was a United Parcel truck which was 20 feet long and 7½ feet wide. Concluding that he could not get the bus into the remaining portion of the zone (the bus was 35 feet long and 8 feet wide and according to the driver required 12 to 14 feet clearance in front in order to swing out if flush with the curb,—if not, it would need 10 feet) the driver parked the bus parallel with the curb with its front approximately opposite the rear end of the truck. The bus was 10½ feet from the curb at its right and its rear was even with the near line of the crosswalk crossing Sacramento Street. Its left side was about 9 inches from the center of the street. The driver testified that if the bus had pulled into the zone flush with the curb and still left room to move out around the truck into Sacramento Street the bus would have been 6 feet into the crosswalk. Later by use of the diagram it appeared that if so parked, leaving 10 feet to clear the truck, the bus practically would have blocked the crosswalk. If the bus were brought in at an angle so as to leave the right side of the bus closer to the curb than parking parallel as it did, the back of the bus would not have protruded as far into the crosswalk as if parked in the zone parallel to the curb. The driver testified that in conjunction with the rules hereafter mentioned the bus should be brought as close to the curb as possible where there was an obstruction in the bus zone; it was a matter of personal judgment for the driver to select the position.

Sacramento Street going into the intersection is an 8 per cent down grade and is 38½ feet wide. Edward Mackay* drove a borrowed 1940 Ford coupé down Sacramento Street in

---

*He and the owners of the car he was driving were originally defendants in the case. A nonsuit was granted in favor of the owners and plaintiff dismissed without prejudice as to Mackay. United Parcel and its driver were also defendants. Plaintiff for the sum of $40,000 entered into a covenant with them not to execute.

second gear. At some point about 40 to 50 feet from the intersection he discovered that both his foot brakes and his emergency brake did not respond. As he approached the intersection he knew that the bus was on the other side but was not sure whether it had stopped or was still moving. He saw someone in the crosswalk behind it. (This, of course, was not the plaintiff, who left the front right of the bus to walk to the curb.) Mackay, desiring to stop his automobile without hitting anybody, noticed the truck with a steel grate for a bumper. For that reason he decided to pull to the right of the bus and stop his car against the truck's bumper. He did not go to the left of the bus because he could not see around it although he did not see any oncoming traffic. He was going 10 to 15 miles an hour before the intersection but did not know his speed in the intersection or beyond it. He claimed that as he entered the intersection he was blowing his horn and yelling that he had no brakes. He became aware of the people whom he struck when he turned his car right to miss the bus. One witness testified that just as he stepped out of the rear door of the bus someone shouted "Look out" and the man who had preceded him out of the door stopped him. The man driving the car yelled that his brakes were not working. The witness stepped back and the car just missed him and the other man. The car proceeded and hit plaintiff who had just alighted from the front of the bus. It also struck a man who had left the curb and had just arrived at the front door of the bus, pinning them between the car and the truck and severely injuring plaintiff.

The bus driver did not see the accident happen. He looked in his rear mirror before crossing the intersection and did not see any traffic behind him. He does not remember whether he again looked into that mirror, but imagined he did so again as it comes automatically. There is another bus stop on Sacramento Street at the end of the block. The bus driver testified that as he approached the intersection he saw that there were persons standing in the zone itself waiting for the bus. The bus driver stated that he knew that in stopping where he did he was disobeying the "rules of the City and County of San Francisco relative to where you should stop that bus." One witness testified that as the bus approached he stepped out into the bus zone and awaited it and that one or more persons also stepped into the zone. He waited by the front door until five or six persons alighted, and then the car came right by him. He heard no yelling or noise.

## Was There Evidence of Negligence?

■ It is well settled that on appeal from a judgment notwithstanding the verdict, the evidence and all reasonable inferences therefrom must be viewed most strongly in favor of the verdict, and all conflicts, if any, resolved in favor of the verdict so that if there is any substantial evidence to support the verdict, the judgment must be reversed. (*Mitchell* v. *Southern Calif. Gas Co.*, 122 Cal.App.2d 692, 695 [265 P.2d 118] ; *Rodabaugh* v. *Tekus*, 39 Cal.2d 290, 291 [246 P.2d 663].)

The following city laws and regulations were read in evidence :

Section 208, Public Utilities Code: ". . . It shall be unlawful for a bus operator to receive or discharge passengers upon a public street at other than a legally established bus zone, provided however, that he may receive or discharge passengers from a bus parked as close to the right-hand curb as practicable and at a point at least two city blocks distant from the nearest legally established bus zone."

Section 209, Public Utilities Code: "Buses must be stopped in marked bus zones. Whenever the driver or operator stops a bus at a bus zone, he shall bring said bus within the confines of said zone as marked out on the curb and/or street, unless such a zone is actually obstructed and the bus cannot be stopped therein."

General Bulletin Number 911, Municipal Railway: "Subject: Coaches stopping at curb. Unless regulated otherwise or when parked vehicles occupy zone, motor and trolley coaches must stop of [sic] curb for the purpose of taking on and discharging passengers, in accordance with rule requirements.

"Strict compliance with this important operative requirement will eliminate the cause for this type of complaint which is being received at this office and will contribute greatly to——

"(1) Safety by keeping roadway clear, thus permitting traffic to flow unobstructed.

"(2) Comfort and convenience of patrons."

Section 3, Rule 45 of the Official Rule Book of the Municipal Railway: "Coaches must never be backed until operator has stepped from coach and inspected the area in rear, warning any children, pedestrians or traffic of his intentions. When it is necessary to pack [sic] a considerable distance he should seek the assistance of a railway employee to flag all traffic."

■ While a carrier of passengers for hire is held to the exercise of the highest degree of care for the safety of passen-

gers in their transportation and is liable for any injury sustained for failure to exercise such care (see Civ. Code, § 2100; *Bonneau* v. *North Shore R. R. Co.*, 152 Cal. 406, 409 [93 P. 106, 125 Am.St.Rep. 68]; *Osgood* v. *Los Angeles etc. Co.*, 137 Cal. 280 [70 P. 169, 92 Am.St.Rep. 171]), that high degree of care ends when the passenger safely alights from the bus. (See *MacLean* v. *City & County of San Francisco*, 127 Cal.App.2d 263, 272 [273 P.2d 698], and *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 735 [306 P.2d 432].) ▇ This means that the duty ends when the passenger is discharged into a relatively safe space, not merely that he alights safely from the bus if he is discharged into a dangerous area. As we said in *MacLean* v. *City & County of San Francisco, supra,* 127 Cal.App.2d at page 272: ''The mere fact of stopping away from the curb *but as near thereto as practicable under the circumstances*'' (emphasis added) is not negligence and buses ''should not discharge their passengers out in the street where there is danger of their being hit by passing vehicles [citations] nor near known dangers from the condition of the street . . .'' See also *Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 735, holding that the rule that the relation of passenger and carrier terminates when a street car passenger alights upon a public street and clears the car from which he alights, is subject to certain qualifications depending upon the circumstances of the case. The court quoted from *Dayton* v. *Yellow Cab Co.*, 85 Cal.App.2d 740, 745 [193 P.2d 959] (p. 735): '' 'until the passenger reaches a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger, the rule of utmost care and diligence set forth in Civil Code, section 2100, still applies.' '' It also quoted from *Boa* v. *San Francisco-Oakland T. Rys.*, 182 Cal. 93, 100-101 [187 P. 2] (p. 735): '' 'Responsibility continues until the passenger has had a reasonable opportunity of getting away from the car without injury.' '' While the Dayton, Boa and Brandelius cases and the cases referred to in the Brandelius case dealt with injuries received by passengers alighting from a common carrier inflicted by an agency of the common carrier, we can see no reason why the exception to the general rule applied in those cases should not apply where, as here, the passengers are discharged into an area of immediate danger. See *''Proximate Cause in California''* by William L. Prosser, 38 California Law Review, pages 369, 401:

"The fact that the intervening cause is the negligent act of a third person will not necessarily relieve the defendant, since his own fault may lie in exposing the plaintiff to the risk that such negligence will intervene. . . . [A] partially blocked roadway with obstructed vision or inadequate room to pass means that some negligently driven automobile may hit a man or another car. . . . The issue here is not one of causation, which is beyond all dispute; but of whether the defendant was under any duty to protect the plaintiff against the intervening cause."

■ Generally, the issue of negligence is a question for the jury. Here the jury well could have found that while, in view of the truck's presence in the bus zone and the fact that parking there would cause the bus to greatly obstruct the crosswalk, it was not practicable to park the bus wholly in the zone, nevertheless it reasonably could have been parked much closer than 10½ feet from the curb, and that the bus in the words of the MacLean case was not stopped as near to the curb "as practicable." (No reason appears why it could not have been parked at least adjacent to the outer line of the bus zone.) The bus driver conceded that in parking as he did he had violated the ordinance requirements that the bus be parked as close to the curb "as practicable." Thus there was support for the jury's finding that defendant was negligent. Moreover, the evidence would support a finding that the bus driver neither at the time he was approaching his parking place, at the time of stopping, nor at the time of opening the doors to let the passengers out, looked to the rear or to the left side to see if the bus zone was then a safe place into which to discharge his passengers and that therefore the driver was negligent.

The most serious question is as to whether that negligence constituted a proximate cause of the accident, or whether the sole proximate cause thereof was Mackay's negligence, that is, broke the chain of causation. ■ In *Ferroggiaro* v. *Tipri*, 153 Cal.App.2d 759, 763 [315 P.2d 446], we set forth the well settled general principles governing the determination of whether an intervening cause is the sole proximate cause of an accident ([2]p. 763) : "A defendant may be negligent for failing to guard against an intervening cause which in ordinary human experience is reasonably to be anticipated or which the defendant has reason to anticipate. In other words, the risk created by the original act of negligence may include the intervention of the foreseeable negligence of others. (Pros-

ser on Torts, 2d ed., p. 268 et seq.)     The fact that the intervening act of a third person is a negligent one will not make it a superseding cause of harm to another for an injury which the original actor helped to bring about, if the original actor at the time of his negligent conduct should have realized that a third person might so act.   (*Warner* v. *Santa Catalina Island Co.,* 44 Cal.2d 310 [282 P.2d 12].)   That is, the defendant will be held liable for the damages resulting from an intervening cause that he could foresee, or for those which are the normal results of the risk he has created.     Of course, if 'the intervening act constituting the immediate cause of the injury was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.'   (*Hale* v. *Pacific Tel. & Tel. Co.,* 42 Cal. App. 55, 58 [183 P. 280].)     But, if the original actor's conduct is a substantial factor in bringing about harm to another, the fact that he neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.   (*Gibson* v. *Garcia,* 96 Cal.App.2d 681 [216 P.2d 119].) '' We quoted from *Osborne* v. *City of Whittier,* 103 Cal.App.2d 609 [230 P.2d 132] : '' 'We hold, therefore, that liability is not, as a matter of law, dependent upon proximity of the damaged property to the dangerous condition, but is dependent upon the dangerous condition being a proximate cause of the damage, and that the question is one of fact' '' and from *Jones* v. *City of South San Francisco,* 96 Cal.App.2d 427, 435 [216 P.2d 25] : '' 'It is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law.   The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen.' ''

The question presented is whether or not when defendant parked its bus 10½ feet from the curb, under the facts of this case, and the driver, without first looking to the rear, permitted his passengers to alight, the second act of negligence was reasonably foreseeable and both actors may be held liable.   In determining this question we must bear in mind '' '. . . the law does not say that if the particular injury aris-

ing from the negligence cannot be anticipated, a recovery cannot be had. That some damage, some injury, would probably arise from the existing negligence, and that it could reasonably have been expected, is all that the law requires to justify a recovery.' '' (Ferroggiaro case, p. 765.)

Thus, the question here is a relatively simple one, although its answer may be more difficult, particularly as to affirm the trial court's action requires that we decide the question as a matter of law rather than of fact. The question is, should the driver in stopping his bus 10½ feet from the curb, some 4½ feet outside the bus zone, without looking to the rear of the bus, and requiring his passengers on alighting from the bus to cross that area of the street, reasonably have anticipated danger to his passengers so alighting.

It is very doubtful if there was any evidence to show that had the bus driver looked to the rear at the time he opened the bus doors he would have seen Mackay's car in a position which reasonably would have warned him that it would go into the bus zone. For the purposes of the discussion hereafter on the question of foreseeability, we will assume that the bus driver's failure so to look alone was not a proximate cause of the accident.

This, then, brings us to the final question as to whether it can be said that it was reasonably foreseeable that any car would be driven into the obstructed bus zone, already occupied by persons waiting to get on the bus. This was a marked bus zone reserved for buses alone and in which stopping, standing or parking any other vehicle is prohibited ''except when necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer or traffic control signal device. . . .'' (Veh. Code, § 586, subd. (i).)*

Because of the violation of the statute and rules of the company constituting negligence on the part of defendant, the plaintiff, a passenger, to whom the highest degree of care was owed, was allowed to get off 10½ feet from the curb, a place of danger. The passenger would not have been in that place of danger but for the negligence of defendant. Such negligence continued until the passenger reached a place of safety. Thus the negligence continued up until the very moment Mackay's automobile drove into the bus loading zone and hit the plaintiff. Was, then, the negligent act of Mackay a superseding cause for the reason that such action on his part

---

*This section was amended in 1957 and subdivision (i) is now subdivision (a)(9).

was not reasonably "foreseeable"? We are here dealing, of course, with a question of causation. Proximate cause is normally a question of fact. It can only be a question of law where reasonable minds cannot differ. Whenever reasonable minds can disagree on the issue it is one of fact and not of law. ▮ Proximate cause, in the legal sense, is that cause "which, in natural and continuous sequence, unbroken by an efficient intervening cause, produced the injury or damage complained of and without which such injury or damage would not have occurred." (35 Cal.Jur.2d p. 551, § 54, and many cases cited.)

▮ It is true that the conception of proximate cause involves an element of foreseeability. But what does this mean? It does not mean that the precise or intended consequence should have been foreseen. Foreseeability does not mean foreseeability of the actual consequences. It simply means foreseeability in the terms of causation. ▮ If the conduct of the person sought to be charged is a substantial factor in bringing about the harm, the fact that he neither foresaw nor should have foreseen the extent or nature of the harm, or the manner in which it occurred, does not prevent him from being held liable. (See many cases collected and commented on in 35 Cal. Jur.2d p. 552, § 55.)

▮ It is obvious that two acts of negligence may concur in bringing about a harmful result. The fact that neither party could reasonably anticipate the occurrence of the other's act will not shield him from liability so long as his own negligence was one of the causes of the injury. The proportionate degrees of the negligence of the two actors is immaterial. (See many cases commented on and collected in 35 Cal.Jur.2d p. 555, § 57.)

▮ It is elementary that where the negligence of the person sought to be charged continues and exists up to the time of injury the concurrent negligent act of another is not a superseding cause, but becomes a concurrent proximate cause. ▮ As is stated in 35 California Jurisprudence 2d at page 561, section 62, supported by innumerable cases: "The fact that neither of the negligent parties could have reasonably anticipated the concurrent negligence will not shield him from liability so long as his own negligence was a proximate cause of the injury or damage complained of. And it is irrelevant in this respect whose negligence was first in time, who was more or who less negligent, or whether one was ordinarily and the other wantonly negligent."

As before stated, ordinarily, foreseeability is a question of fact—it only becomes a question of law if reasonable men could not disagree. (See cases collected 35 Cal.Jur.2d p. 579, § 73.)

Of course, one could not reasonably foresee that Mackay would lose control of his automobile and choose to run to the right of the bus rather than into the back of it or to its left. But certainly it was foreseeable that, if one parked the bus 10½ feet from the curb on a street so narrow that traffic proceeding in the same direction was barred, someone might if he lost control of his car drive to the right rather than to the left of the bus. The bus driver here involved testified that in parking the bus 10½ feet from the curb he knew that he was disobeying the ordinance and rule. It is an obvious fact that if a bus is so parked that automobiles cannot pass it on the right that passengers alighting will not be hit by automobiles which, for any reason, try to pass it on the right. It is certainly a reasonable inference that one of the purposes of the drafters of the statute and rule requiring buses to park so that approaching automobiles could not pass them on the right was to protect alighting passengers from this very peril. The lawmakers of the city and the company saw that such a peril was possible. Such, a danger to them was "foreseeable," and to protect against it they passed the ordinance and adopted the rule.

In *Ferroggiaro* v. *Tipri, supra,* 153 Cal.App.2d 759, one of the defendants sought to be charged with liability drove his car, negligently, into a telephone pole. This broke the power lines operating traffic lights at an intersection some distance away. Two cars approached the intersection at right angles. The drivers so negligently operated their cars that an accident occurred. Their negligent conduct did not, as a matter of law, break the chain of causation. It was argued in that case that it was not legally "foreseeable" that the negligence of the driver who hit the pole would be followed by the negligence of the two drivers whose cars collided. It was held that "foreseeability" and "proximate cause" were fact questions. The court cited many cases in support of the proposition that "where the first actor negligently maintains an obstruction in the public streets and the plaintiff is required to go around the obstruction and is injured by the negligence of a second and subsequent actor, the second act of negligence is reasonably foreseeable . . ." ([2]P. 764.) In the instant case the plaintiff got off where the bus driver stopped, believing,

and having a right to believe, that she was in a place of safety. She was not. She was in a place of peril because of the bus driver's negligence in obstructing the street. Because of the obstruction Mackay had three choices—go to the right or left of the bus, or hit the bus. He chose to go to the right. Had the bus been lawfully parked Mackay could not have done so. This was a peril the ordinance and rule were passed to protect against.

This court in the Ferroggiaro case referred to several leading cases, all holding that foreseeability is a question of fact. At pages 764-765, this court said:

"In *Jackson* v. *Utica Light & Power Co.*, 64 Cal.App.2d 885 [149 P.2d 748], an employee of a construction company met his death by electrocution when his power shovel came in contact with a farmer's telephone wire which was strung upon the same poles as were defendant's high voltage power lines. A distant pole had broken as a result of a rotten condition and, as a result, the power lines had fallen on the telephone wires. The court affirmed judgment for the plaintiff holding that the power company's negligence in failing to repair the situation or to inspect the poles after notice that construction work was to begin on a new highway running under the wires was a proximate cause of the death of the decedent.

"The case of *Walmsley* v. *Rural Telephone Assn. of Delphos*, 102 Kan. 139 [169 P. 197], is an interesting one. In that case defendant negligently permitted its telephone wire to sag across a public highway. Plaintiff, riding on a wagon with a grain bin loaded on it, was shot when the grain bin caught on the wire, causing the wagon to upset and throwing plaintiff to the ground. The bin struck the rifle which the plaintiff was carrying, discharging the gun and wounding him. The court affirmed judgment for the plaintiff, stating (p. 199): 'Damage of some sort was natural and probable, almost inevitable. That somebody would be shot through defendant's negligence would not have been anticipated. But the law does not say that if the particular injury arising from the negligence cannot be anticipated, a recovery cannot be had. That some damage, some injury, would probably arise from the existing negligence, and that it could reasonably have been expected, is all that the law requires to justify a recovery.' The same thought was expressed in *Carroll* v. *Central Counties Gas Co.*, 74 Cal.App. 303, 307 [240 P. 53], where it was stated: "If the negligent act or omission is one which

the company ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then it is liable for any injury proximately resulting therefrom, although it might not have foreseen the particular injury which did happen.' (See also *Lim Ben* v. *Pacific Gas & Elec. Co.*, 101 Cal.App. 174 [281 P. 634].) . . .

"In *Gibson* v. *Garcia*, 96 Cal.App.2d 681 [216 P.2d 119], an automobile hit a pole maintained by the street railway company and the pole broke and hit the plaintiff. Plaintiff sued the street railway company alleging that the pole was weak, that the condition was known to defendant, and that its negligence was a proximate cause of the accident. Defendant's demurrer was sustained without leave to amend. This was reversed, the court holding that proximate cause was a question of fact and not of law.

"*Carroll* v. *Central Counties Gas Co.*, 74 Cal.App. 303 [240 P. 53], illustrates the inclination of the courts to hold that the question of foreseeability is generally one of fact and not of law. There the automobile in which plaintiff was riding swerved to avoid an oncoming vehicle. Plaintiff's automobile fell from a bridge and broke a gas line operated by defendant. This permitted gas to escape which became ignited and burned the plaintiff. The trial court sustained a demurrer without leave to amend. This was reversed, the court holding that it could not be said, as a matter of law, that the defendant gas company could not reasonably have foreseen the likelihood of danger from the pipe to persons lawfully using the highway. At page 308 it was stated: 'Whether negligence *can* be inferred from the evidence is for the determination of the court, but whether it *ought* to be inferred is a question for the jury. [Citing a case.] This rule applies where the facts are undisputed, as well as where the evidence is conflicting, if conflicting inferences can reasonably be drawn therefrom.' "

All of these cases are much closer on the issue of foreseeability than the instant one, yet in all of them foreseeability was held to be a question of fact.

There are other cases directly in point. In *Richardson* v. *Ham*, 44 Cal.2d 772 [285 P.2d 269], the defendant left heavy roadbuilding equipment on the mesa, unlocked. Three drunks started it, drove it around for awhile, and jumped out after heading it toward a canyon. It traveled for about a mile, unattended, doing major damage. The court held this was a reasonably foreseeable risk that the owners of the bulldozer should have guarded against. In the instant case the bus

driver violated a statute and rule passed for the very purpose of protecting passengers from the very danger that developed.

Another interesting case is *Fennessey* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 141 [124 P.2d 51]. There a public utility truck parked illegally between a safety zone and the adjacent curb while servicing the street lights. A jitney bus swerved onto the streetcar tracks and hit the plaintiff. It was held that the question of proximate cause was one for the jury, citing many cases, and quoting from *Lacy* v. *Pacific Gas & Elec. Co.*, 220 Cal. 97, 98 [29 P.2d 781], as follows: " 'The authorities in this state hold that where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as an independent act of negligence, but the two concurring acts of negligence will be held to be the proximate cause of the injury.' "

The judgment notwithstanding the verdict is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 21, 1958. Shenk, J., was of the opinion that the petition should be granted.